# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| EMISIAH HUGHES, individually, and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Case No.: 1:24-cv-1071 |
| v. ) ) | |
| CIRCLE K STORES, INC., ) ) | **JURY TRIAL DEMANDED** |
| Serve registered agent at: ) Corporation Service Company ) 211 E. 7th Street, Suite 620 ) Austin, Texas 78701 ) ) | |
| Defendant. ) | |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Emisiah Hughes, individually, and on behalf of all others similarly situated, and for her Class Action Complaint against Defendant Circle K Stores, Inc., states:

### INTRODUCTION AND BACKGROUND ON THE TCPA

1.  Plaintiff Emisiah Hughes ("Hughes") brings this case to protect the privacy rights of herself and a class of similarly situated people who were sent improperly marketing text messages on their phones by Defendant Circle K Stores, Inc. ("Circle K"). Circle K repeatedly sent text messages to Hughes and the putative class members after Hughes and the putative class members expressly requested that Circle K stop sending them text messages.

2.  In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3. The TCPA affords special protections for people who request to be placed on a company's internal do not call list. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

4. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Hughes, frequently face. For example, in 2023 alone, approximately 55 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited February 8, 2024). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States.

6. This Court has personal jurisdiction over Circle K because Circle K transacts business in Illinois, sends telemarketing text messages to persons in Illinois (like Hughes), sells its various products and services in Illinois and maintains an office in Illinois.

7. Circle K knowingly and purposefully availed itself to Illinois by sending telemarketing text messages to Hughes at her "309" area code, which is associated with the State of Illinois.

8. Hughes experienced the annoyance, frustration, and disruption from Circle K's telemarketing text messages, as described in this Complaint, while present in this District.

9. Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claim arose in this District.

## PARTIES

10. Hughes is an individual who at all times material to this Complaint has resided in Peoria, Illinois and is and has been a citizen of the State of Illinois.

11. Hughes brings this action on behalf of herself and all others similarly situated.

12. Circle K is a corporation organized under the laws of the State of Texas, is headquartered in Arizona, and, at all times relevant to this Complaint has been in good standing to transact business in Illinois and throughout the United States.

13. Circle K owns, operates and/or franchises hundreds of convenience stores and gas stations throughout the United States, including in Illinois.

14. Circle K has numerous convenience stores and gas stations in Illinois, including at least 8 locations in Peoria, West Peoria and East Peoria.

15. Circle K also has multiple offices throughout the United States that oversee the businesses operations for various regions in the United States. Circle K's "Heartland Division" is located in Lisle, Illinois.

16. Circle K's website, which identifies the locations of its various convenience stores and gas stations is www.circlek.com.

17.     Circle K markets its products and services, in part, through sending text message advertisements to consumers' cell phones.

### THE TELEMARKETING TEXT MESSAGES SENT TO HUGHES

18.     Hughes is the owner of a cell phone. Her phone number is 309-XXX-0186.

19.     Hughes's phone is a residential line that is used primarily for personal purposes, namely, to communicate with friends and family members.

20.     Hughes's cell phone account is held in her personal name.

21.     On or about February 22, 2022, Hughes received a marketing text message from Circle K that ended, "Txt HELP 4 Info, STOP 2 End."

22.     On February 22, 2022, Circle K immediately responded to Hughes with an automated text message confirming she would no longer receive text messages from Circle K. The text message stated:



23. Consistent with its text message advising that Circle K would stop sending text messages to Hughes if she responded "stop," Circle K also states on its website that a recipient will "stop receiving messages from Circle K" by responding "stop" to a "text mobile message received from Circle K."

24. Despite confirming it would no longer send Hughes text messages, Circle K sent another marketing text message to Hughes on May 6, 2022, at approximately 2:37 p.m., stating:

> Circle K: Super Duper Announcement!!! Our new game is Live. Play Rock, Paper, Prizes & win daily prizes! https://win.circlek.com/d/ Txt HELP for Info, STOP 2 end.

25. On or about May 26, 2022, at approximately 2:44 p.m., Circle K sent Hughes another marketing text message, stating:

> Breaking News! Mtn Dew Purple Thunder on Polar Pop! Exclusive at Circle K!
> Try for FREE! Expires 5/15: https://mfon.us/4txhpr8wx7s

26. On information and belief, upon clicking the links in the aforementioned text messages, the person is directed to a website with Circle K's logo and information about the offer contained in the text message.

27. On information and belief, short code "31310," which was the short code associated with the text messages sent by Circle K to Hughes was a short code registered to Circle K at the time the text messages were sent to Hughes.

28. Circle K's conduct violated the privacy rights of Hughes and the putative class members, as they were subjected to annoying and harassing text messages. Circle K's texts intruded upon the rights of Hughes and the putative class members to be free from invasion of their interest in seclusion.

29. Circle K's conduct caused Hughes and the putative class members to waste time addressing and/or otherwise responding to the unwanted text messages.

30. On information and belief, Circle K sent these text messages to Hughes and the putative class members for the purpose of selling its products and services.

**Class Allegations**

31. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Hughes brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of Rule 23.

32. Hughes seeks to represent the following class:

> All persons in the United States from four years prior to the filing of this action through class certification to whom: (1) Circle K sent text messages marketing its products or services, (2) Circle K sent more than one text message to the person in a twelve-month period, and, (3) Circle K sent such text messages after the person requested that Circle K stop sending them text messages.

33. Hughes reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

34. The members of the proposed classes are so numerous that joinder of all members is impracticable. Hughes reasonably believes that hundreds or thousands of people have been harmed by Circle K's actions. Records of the phone numbers of the putative class members and the text message correspondence with the putative members are readily identifiable through records available to Circle K.

35. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

36. On information and belief, Circle K has texted and continues to text people who have requested that Circle K stop texting them, *i.e.*, to be placed on Circle K's internal do not call list. It is reasonable to expect that Circle K will continue to send such text messages absent this lawsuit.

37. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether Circle K sent text messages to Hughes and the putative class members after they requested that Circle K no longer send them text messages;

    b. Whether Circle K's conduct violates 47 U.S.C. § 227(c);

    c. Whether Circle K's conduct violates the rules and regulations implementing the TCPA; and,

    d. Whether Hughes and the putative class members are entitled to increased damages for each violation based on the willfulness of Circle K's conduct.

38. Hughes's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

39. Hughes and her counsel will fairly and adequately protect the interests of the members of the proposed class. Hughes's interests do not conflict with the interests of the proposed class she seeks to represent. Hughes has retained lawyers who are competent and experienced in class action litigation, including TCPA litigation and consumer law.

40. Hughes's counsel will vigorously litigate this case as a class action, and Hughes and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

41. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual

claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

42. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

43. Questions of law and fact, particularly the propriety of sending text messages to persons who requested that Circle K no longer text them, *i.e.*, to place them on Circle K's internal do not call list, predominate over questions affecting only individual members.

44. Circle K has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

### Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* – individually, and on behalf of the class

45. Hughes incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

46. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

47. The regulations prescribed under Section 227(c) require companies like Circle K, who engage in telemarketing to institute "procedures for maintaining a list of persons who request

not to receive telemarketing calls on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

48. These procedures must meet several minimum standards, including, but not limited to:

**(1)** *Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

**(2)** *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

**(3)** *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

**(4)** *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

**(5)** *Affiliated persons or entities.* In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

> **(6)** *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

*See* 47 C.F.R. § 64.1200(d)(1)-(6).

49. Circle K failed to maintain and/or implement these minimum standards by repeatedly sending text messages to Hughes and the putative class members after Hughes and the putative class members requested that Circle K stop sending them text messages, and Circle K promised to abide by such requests.

50. In addition, the TCPA allows the Court to enjoin Circle K from sending text messages to phone numbers that should have been placed on Circle K's internal do not call list. *See* 47 U.S.C. §§ 227(c)(5)(A).

51. By sending text messages to the phones of Hughes and the putative class members after their numbers should have been placed on Circle K's internal do not call list, Circle K violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

52. Circle K knew or should have known that Hughes and the putative class members did not wish to receive text messages as such persons expressly advised Circle K that they did not wish to receive text messages from Circle K, and Circle K promised it would no longer send such messages.

53. Hughes and the putative class members are entitled to damages of $500.00 per violation for each text message sent by Circle K in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Circle K willfully violated the TCPA.

**Demand for Judgment**

WHEREFORE Plaintiff Emisiah Hughes, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant Circle K Stores, Inc. pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Hughes as the class representative;

b. Enter an order appointing Butsch Roberts & Associates LLC as counsel for the class;

c. Enter judgment in favor of Hughes and the putative class for all damages available under the TCPA, including statutory damages of up to $500 per violation of the TCPA, or up to $1,500 per violation of the TCPA if Circle K willfully violated the TCPA;

d. Enter judgment in favor of Hughes and the putative class that enjoins Circle K from violating the TCPA's regulations prohibiting Circle K from sending text messages to persons who have requested that Circle K stop texting them;

e. Award Hughes and the class all expenses of this action, and require that Circle K pay the costs and expenses of class notice and administration and any applicable pre- and post-judgment interest; and,

f. Award Hughes and the class such further and other relief the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff Emisiah Hughes demands a jury trial in this case.

**BUTSCH ROBERTS & ASSOCIATES LLC**

/s/ *Christopher E. Roberts*
Christopher E. Roberts #6302857 (Lead Counsel)
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Phone: (314) 863-5700
Fax: (314) 863-5711
CRoberts@butschroberts.com

Robert J. Hanauer #6306102
HANAUER LAW OFFICE, LLC
456 Fulton Street, Suite 200
Peoria, IL 61602
Tel: (309) 966-4423
rhanauer@hanauerlaw.com

Attorneys for Plaintiff